## UNITED STATES v. BANK OF NORTH WILKESBORO.

(Circuit Court of Appeals, Fourth Circuit.    December 19, 1910.)

### No. 1,001.

PENSIONS (§ 10*)—FRAUDULENT PENSIONS—PENSION CHECKS—PAYMENT—GOV-
ERNMENT'S RIGHT TO RECOVER.

Act Cong. Dec. 21, 1893, c. 3, 28 Stat. 18 (U. S. Comp. St. 1901, p. 3270),
provides that any pension granted under any law of the United States
shall be deemed by all officers of the United States to be a vested right
in the grantee to the extent that payment thereof shall not be withheld
or suspended until after due notice to the grantee of not less than 30
days, the Commissioner of Pensions after hearing all evidence shall decide
to annul, vacate, modify, or set aside the decision on which the pension
was granted. *Held*, that where a fraudulent pension was granted to W.,
and while the same was in full force, and before cancellation on the
notice prescribed by such act, defendant bank cashed a number of pen-
sion checks drawn to her order, which on presentation were paid by the
government, it could not recover the money from the bank on the theory
that the pension was fraudulent and invalid.

[Ed. Note.—For other cases, see Pensions, Dec. Dig. § 10.*]

In Error to the Circuit Court of the United States for the Western
District of North Carolina at Greensboro.

Action by the United States of America against the Bank of North
Wilkesboro. Judgment for defendant, and plaintiff brings error. Af-
firmed.

A. L. Coble, Asst. U. S. Atty. (A. E. Holton, U. S. Atty., on the
brief), for the United States.

W. M. Hendren (Manly & Hendren, on the brief), for defendant
in error.

Before PRITCHARD, Circuit Judge, and McDOWELL and
ROSE, District Judges.

ROSE, District Judge. The United States, as plaintiff below, sued
the Bank of North Wilkesboro, which will be called the "defendant,"
to recover $744.87, the aggregate amount of a number of pension
checks drawn by the government to the order of Mary M. Webster,
cashed by the defendant, and paid by the government to the defendant.

One Webster served as a soldier in the Cherokee War. He was mar-
ried. His wife's name was Elzira. Both of them died at some time
prior to the year 1900. In March of the last-mentioned year a certain
Mary M. Marley made an application for a pension as the widow of
Webster. She said her name was Mary M. Webster. She filed vari-
ous forged and fraudulent affidavits in support of this application.
Her claim was allowed, and the name of Mary M. Webster was placed
upon the pension rolls. It was not until 1903 that the government dis-
covered the fraud which had been perpetrated upon it. Until then the
pension checks had been regularly issued to Mary M. Webster. As
regularly Mary M. Marley indorsed them Mary M. Webster. She
lived about 10 miles from North Wilkesboro. Her son-in-law, who
appears to have been the planner of the fraud and its principal bene-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ficiary, deposited these checks so indorsed in his account in the defendant bank, or had it cash them for him. It knew nothing about Mary M. Marley or Mary M. Webster or any of the other circumstances.

At the trial below the facts above summarized were found as a special verdict. The government says the court erred in entering upon such verdict a judgment for the defendant. It rests its contention upon the recent decision of the Supreme Court in United States v. National Bank of Providence, 214 U. S. 302, 29 Sup. Ct. 665, 53 L. Ed. 1006. In that case it appeared that certain persons whose names had been entered upon the pension roll had died. In other cases widows on that roll had remarried and their right to remain on it had ceased. A certain Munson forged quarterly vouchers in the names of these deceased and remarried persons. He obtained possession of the checks mailed to them. He forged their indorsements and induced the National Exchange Bank to cash them for him. The bank presented them to the government. They were paid. The court held that as the bank by presenting them had guaranteed the indorsements upon them it was bound to refund the money to the government. All that the case decided was that the government in such matters as the payment of pension checks is not charged with knowledge of the signatures of the vast numbers of pensioners and is not negligent in paying those checks upon forged indorsements. It was not therefore estopped when the fraud was discovered from insisting that the bank should repay the money the latter had obtained upon such checks.

This decision has, in our judgment, no relation whatever to the case at bar. Here the very person whom the government put upon its pension roll indorsed the checks and received the money. It is true that such person in order to get upon the roll had assumed a name not her own and had pretended. to a past which was not hers. She had, however, succeeded in inducing the government to believe that her story was true. Her application had been made and investigated. The Commissioner of Pensions had adjudicated that she was entitled to a pension and had thereupon entered her name upon the pension roll. By the express enactment of Congress any pension granted "under any law of the United States authorizing the granting and paying of pensions on application made and adjudicated upon shall be deemed and held by all officers of the United States to be a vested right in the grantee to that extent that payment thereof shall not be withheld or suspended until after due notice to the grantee of not less than 30 days, the Commissioner of Pensions after hearing all the evidence shall decide to annul, vacate, modify or set aside the decision upon which such pension was granted." Act Dec. 21, 1893, c. 3, 28 Stat. 18 (U. S. Comp. St. 1901, p. 3270).

The contention of the government, when carried to its last analysis, is that every one who cashes a pension check must satisfy himself at his peril not only that the check is indorsed by the very human being who applied for the pension, but must go further and make sure that such person had not made the Commissioner of Pensions believe that her name was something different from what it was, or that she

had once been the wife of a man to whom she had in fact never been married. Each individual when asked to cash a pension check, if the law be as the government says it is, must conduct for himself a partial revision of the pension roll and must summarily decide whether the name of the payee of the check was or was not entitled to be placed upon that roll. The claim of the government involves the consequence that, while no individual could safely cash a pension check for one whose name had been fraudulently placed upon the roll, that person so long as his name was on the roll could compel the Pension Agent or the Commissioner of Pensions to pay him his pension, although those officials might then know all about the fraud and be engaged in prosecuting him for it.

On February 24, 1894, Attorney General Olney advised the Commissioner of Pensions that the statute above referred to, and in substance quoted, "applies to every certificate that has been lawfully granted by the Pension Office, whether the evidence upon which the office acted was complete or incomplete, honest, fraudulent, or forged. Such certificate may still, of course, be canceled upon charges made; but until the 30 days' notice is given, the evidence received and a decision reached, the money must continue to be paid, even though the crime has been confessed and the criminal may already be serving his term of sentence. In fact, the statute practically abolishes the right to suspend payments pendente lite in these cases." 20 Op. Atty. Gen. 735, 736.

The defendant cannot be cast in damages because innocently and without knowledge of any fraud it has cashed a check, which, according to Attorney General Olney, the Commissioner of Pensions must have cashed even though he knew all about the fraud.

We have dwelt upon the statute because it makes so plain the unreasonableness of the position for which the government here contends.

When the law gives such effect to the presence of a name upon the pension roll, it becomes unnecessary to inquire whether if there was no such act upon the books the result in this case would not be the same.

The money was paid to the very individual who asked the government for it, and to whom the government decided to give it.

A learned and interesting discussion of the various principles involved in the general question and of many of the cases which have dealt with them will be found in the opinion of Chief Justice Shepard of the Court of Appeals of the District of Columbia in the case of Central National Bank v. National Metropolitan Bank, 31 App. D. C. 391, 17 L. R. A. (N. S.) 520.

The judgment below was right and must be affirmed.